JOHNSON et ux. v. HUGHES et al.
BURNINGHAM et ux. v. HUGHES et al.

Nos. 7544, 7545. Decided June 6, 1951. (232 P. 2d 362.)

See 17 C. J. S., Contracts, sec. 609. Damages, certainty of. 15 Am. Jur., Damages, secs. 20 et seq.

*Stewart, Cannon & Hanson,* Salt Lake City, *George K. Fadel,* Bountiful, *Ernest F. Baldwin, Jr.,* Salt Lake City, for appellants.

*W. J. Mitchell, Raymond R. Brady,* Salt Lake City, for respondents.

LATIMER, Justice.

These are two separate cases, commenced in the lower court to recover damages caused by appellants' failure to properly construct a house for each of the respondents. The cases were heard together in the court below and, by stipulation, were consolidated in the briefs and arguments before this court. The appeals present substantially the same claimed errors, and therefore, the two cases will be disposed of in this one opinion.

On or about March 20, 1947, respondents Lloyd I. Burningham and his wife entered into a written agreement with appellants, under the terms of which appellants agreed to construct a home for the Burninghams. In preparing the specifications for the home, appellants used a standard "Description of Materials" form supplied by the Federal Housing Administration, although the construction was not financed with funds from that agency and no examination or approval of the construction was made by government representatives. The form was prepared and signed by appellant C. H. Hughes. Subsequently, the contract was modified to include the erection of a retaining wall, garage,

patio, driveway and other incidental extras. On August 16, 1947, the building was completed and Burninghams paid the full amount due and entered into possession of the premises.

Shortly after they took possession, ceiling and wall cracks began developing in the plaster and portions of the cement retaining wall began to disintegrate. Complaints were made to appellants about the defects in the construction, and, upon failing to receive a satisfactory adjustment, suit (No. 7545) was commenced. In their complaint, Burninghams alleged that the crumbling which had developed in the retaining wall was caused by improperly mixed concrete, in that sufficient cement was not used; and that the cracks in the walls and ceilings of the house had developed because appellants had used an inferior and improper plaster mixture and had not properly staggered the lath. After the pre-trial hearing, the trial judge ordered that respondent Clarence E. Peck, who was the subcontractor for plastering the house, be included as a party defendant. Accordingly, the Burninghams amended their complaint to include Peck as a defendant and appellants filed a cross-complaint against him. Prior to resting their case, the Burninghams again amended their complaint to include an allegation that an additional cause for the cracking was that the rafters supporting the roof of the building had not been adequately braced, and that they were not of sufficient size to hold the roof firm and rigid.

The respondents, Vern F. Johnson and his wife, entered into their oral agreement with appellants on April 16, 1947. By this contract, appellants agreed to construct a home for the Johnsons for the cost of materials and labor plus ten per cent. No written specifications were prepared, but there was an understanding that a good and properly constructed house would be erected. On November 16, 1947, the Johnsons took possession of the premises and paid the remaining amount due on the contract. Sometime there-

after, the Johnsons entered into another agreement with appellants to construct a concrete driveway and walks on the premises. The amount due on both contracts was paid in full.

Shortly after Johnsons took possession, the plaster on the walls and ceilings of the house began to crack, the number of cracks increasing and the size enlarging. After completion of the walks and driveways, the concrete mixture began to crumble. The Johnsons informed appellants of the defects in the construction and though C. H. Hughes, one of the appellants, indicated that a plasterer would be sent to repair the defects, nothing was done. In their complaint (action No. 7544) Johnsons alleged that defective plaster had been used in the various rooms; that the plaster and lath had been improperly applied; and that the mixture of concrete used in the driveway had not contained a sufficient amount of cement. As in the Burningham case, the complaint was later amended to include an allegation that the rafters in the roof of the house had been improperly braced and were too small to keep the roof firm and rigid. The pre-trial order did not require the inclusion of Peck as a defendant, and he is not a party in the Johnson case.

The trial judge found that in constructing the retaining wall for the Burninghams and the driveways and walks for the Johnsons, the appellants had used too small an amount of cement in the concrete mixture. He further found that the roofs of both houses had been improperly constructed in that the rafters were spaced too far apart and improperly braced; that the rock lath was not staggered and the seams not covered with metal lath as required by proper construction; and that the failure to meet the ordinary standards of good construction as set forth above caused the retaining wall to disintegrate and the plaster to crack. The trial court awarded judgment in favor of the Burninghams in the total amount of $2,350.00, arrived at in the following way: $100.00 to repair the retaining wall; $250.00 to properly brace the roof; and $2,000.00 to

replaster the walls and ceilings. In the Johnson case, judgment was awarded against appellants in the amount of $1,850.00, being totalled as follows: $100.00 to repair the driveway; $250.00 to strengthen the roof; and $1,500.00 to replaster the walls and ceilings.

We are met at the threshold of this cause with respondents' contention that the controversy between appellants and Peck is not properly before this court. We overrule this assertion for the reason that while there are some procedural irregularities, they are not jurisdictional. Peck was joined as a party defendant in the suit below and a judgment was rendered in his favor. He was named as a party in the notice of appeal and we assume, as there is no evidence to the contrary, that the clerk of the district court properly mailed to him or his counsel a notice of the appeal. While he did not file a brief nor participate in the oral arguments, it does not affirmatively appear that appellants stipulated to dismissing him as a party or waived their rights to proceed as against him. They appealed from the final judgment that denied them any relief as against him which we believe to have been the proper procedure to vest this court with jurisdiction. Contrary to respondents' argument, a cross appeal is not involved.

Appellants raise the same points on appeal in both cases with two variations. In the Burningham case (No. 7545) they assert two additional points, i. e., that the judgment in favor of Peck should be reversed, and that the award of $100.00 for the repair of the wall and patio was erroneous. Stated generally, the points common to both cases can be consolidated into one contention; that is, the evidence does not sustain the findings made by the trial judge.

The evidence in the record requires us to overrule this contention with the exception of the award of $250.00 for strengthening the roof. Appellants do not dispute the fact that the plaster on the walls and ceilings of the two houses was badly cracked. They, however, seek to cast the re-

sponsibility on Peck, the plasterer, claiming that the court should have found that he used an improper and deficient mix. Even if such were the case insofar as respondents are concerned, they would be entitled to recover as it was appellants' responsibility to furnish a reasonably well constructed home.

The trial judge based his findings on sub-standard construction rather than an improper plaster mix, and so we relate some of the facts to establish there is evidence to sustain his findings. It should be borne in mind that if the improper construction of the roof or the improper placing of the rock lath either alone or together brought about the cracking of the plaster, respondents are entitled to recover for that element of damage.

The trial court heard several witnesses all of whom were experienced in plastering houses. Various opinions as to the cause of the cracking were expressed and some of these were to the effect that the rock lath had not been placed in the proper manner. The sections were laid parallel, end to end rather than staggered, so that the seams ran in straight lines the full length of the room. The seams were not covered with metal lath to reinforce the plaster that covered them. This, according to respondents' witnesses, would leave a long thin strip of plaster not strengthened by a proper base, which would have a tendency to crack along a seam if there were any movement of the walls or ceiling. The location and description of the cracks substantiate this theory. Representatives from the company which manufactured the lath and others testified that the method used by appellant was one of standard practice and one advocated by that company. It was the opinion of appellants' witnesses that the cracking was caused by an improper mixture of the base plaster. The trial judge elected to accept the testimony of those witnesses who believed it was not good present-day construction to lay the sections of rock lath so that the seams were long and unbroken and not

reinforced by metal lath. Furthermore, he was requested by counsel to view the premises and he personally inspected the work. He had an opportunity to note the manner in which the ceilings and walls had cracked and to form some conclusions from what he observed. While the record does not disclose all that was observed by him, what he saw must have been consistent with the testimony of those witnesses who claimed the method of placing the rock lath contributed to cracking of the plaster. There being evidence in the record to sustain the questioned finding, it must be affirmed.

During the course of the trial, the judge suggested that each side obtain building experts to examine the houses and report on their conclusions as to the reason for the cracking. Each side obtained an experienced architect. Their testimony is almost diametrically opposite, but the trial court concluded to accept the conclusions of Mr. Miller, an experienced architect and a witness for respondents. He testified as to having made a thorough examination of the house, and, that in his opinion the cracking had developed because the rafters supporting the roof had not been properly spaced or braced. The "Descriptions of Materials" sheet prepared and signed by appellant originally provided that the rafters should be 2 x 4's spaced at 12-inch centers. The center to center distance was first entered in ink, but was subsequently changed in pencil to 24 inches. The record does not disclose that respondents agreed to this change and Miller's testimony was that good construction required that these rafters be not more than 16 inches from center to center. In addition, Miller testified that the bracing was not properly located and was inadequate when consideration was given to the size of the roof and the length of the rafters; that the support for the roof was so flimsily constructed it would move excessively with the wind; that the movement would be transmitted through the framework of the house, and that this movement caused the plaster to crack.

Appellants attack this evidence because of it being contrary to the evidence of their expert and because they claim the witness did not make a thorough and complete examination and was, therefore, not qualified to express an opinion. Assuming that there is conflict in the evidence and that the expert witness for appellants made a more thorough examination than did the expert for the respondents, this would not require the court to disregard entirely Miller's testimony. The mentioned matters might affect the weight to be given to the testimony, but Miller's evidence is not inherently improbable or unworthy of belief. Moreover, most of the conflict was about matters which were visible to one inspecting the premises and the trial judge made two inspections of the houses and could readily ascertain which of the two experts presented the most plausible explanation. Contrary to appellants' contention, this finding is supported by competent evidence.

A different question is presented in attempting to sustain the trial court's award of $250.00 as the amount reasonably necessary to repair the roof. After a thorough search of the record, we are unable to find any evidence, either direct or by inference, from which the trial court could determine the amount necessary to repair and strengthen the improper construction of the roof. Accepting Miller's testimony that it was improperly constructed, there, nevertheless, remains a lack of evidence to show what it would cost to correct the condition. Even though the trial judge may have observed the condition of the roof, there is no way by which this court can determine the reasonableness or unreasonableness of his award. The record being barren of any evidence to sustain this finding, the judgments cannot be sustained. This does not, however, require a new trial on all issues as testimony can be taken to determine the reasonable cost of repairing and strengthening the roof without involving other matters.

The two separate questions involved in the *Burningham* case (No. 7545) are: (1) that the court erred in awarding $100.00 as a reasonable amount for the repair of the retaining wall; and (2) that the court erred in dismissing the cross-complaint against Peck without making ■ findings on material facts. The first of these questions requires little discussion. The respondents alleged damages in the sum of $500.00 as the result of the improper cement mix used in the basement walls and retaining wall. The evidence is sufficient to establish that an improper mixture was used and that the concrete was inadequate for the use intended. There was evidence that the cost of repairing the retaining wall and the foundation would be as much as $500 but the amount with respect to each is not segregated. While the trial judge had an opportunity to see the relative amount of cement work that would be necessary to repair the wall as compared to the foundation, we are not prepared to say that this alone would sustain the award. In view of the fact that one other element of damage requires the taking of evidence, we believe this element should be fixed with greater certainty.

Appellants' last contention asserts the trial court erred in failing to make findings of fact upon material issues presented in the cross complaint against respondent Peck. Perhaps the findings are not as complete as they would have been had Peck been a principal litigant, ■ but for the most part he was a forgotten man. He was not joined as a party in one action and with the cases consolidated for trial little attention was paid to him. Some of the orders and certain ancillary proceedings fail to include him as a party. The findings were prepared with the thought of sustaining a verdict against appellants, and they did not seek to have them modified or extended to cover the issues raised by the cross complaint. However, when consideration is given to the issues as framed, the findings are adequate to cover all material facts.

Appellants, in their cross-complaint, do not allege that the plaster mix was deficient or that it was improperly applied by Peck. They merely state that respondents in their complaint allege such to be the fact, and, that if it is established at the trial that Peck did not meet the required standards, then he should be required to save them free from harm. Under this pleading, in order for appellants to recover from Peck, the court was required to find affirmatively that the plaster mix was not up to the required standards and that the deficiency was the cause of the cracking. Respondents alleged three grounds of improper construction, only one having any bearing on Peck's liability. The court specifically found that the damages were caused by improper work performed and materials furnished by appellants. This finding negatives a further finding that improper performance on the part of Peck in any way contributed to the damage. The judge did not specifically prescribe in his findings that the mix met the standards of good construction or that it did not contribute to respondents' damage, but such is implied from the findings made. Moreover, in his findings of fact he states that the action against Peck should be dismissed. This statement, when considered with the findings of fact, leads to two possible conclusions, these are, either the plaster met the necessary requirements, or its weakness was not the cause of the cracking. It would appear to be futile for this court to send the cause back to the district court to make a finding which is so clearly implied by the record before us.

Lest appellants be concerned that the findings as made do not permit them to claim that the trial court erred because the evidence is insufficient to sustain the finding, we have assumed that their points require us to answer this contention. The evidence on these matters was in dispute both as to the plaster being inferior and as to its composition being the reason for the cracking. The trial court

having resolved the conflict in favor of respondent, our oft-repeated rule applies.

The judgment in the *Burningham* case (No. 7545) is affirmed with the exception of the $350.00 allowed for repairing the roof and retaining wall; and the judgment in the *Johnson* case (No. 7544) is affirmed with the exception of the $250.00 allowed for repairing the roof. As to those items, the judgments are reversed and the causes remanded with directions to the trial court to take evidence as to the damages sustained. Each party shall bear his own costs.

WOLFE, C. J., and WADE, McDONOUGH, and CROCKETT, JJ., concur.